# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| NICOLE CAREW, | Case No.: 1:18-cv-00355-REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Respondent, | |

Pending before the Court is Petitioner Nicole Carew's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's decision denying her application for Supplemental Security Income disability benefits for lack of disability. *See generally* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On April 7, 2016, Petitioner Nicole Carew ("Petitioner") protectively filed an application for Supplemental Security Income disability benefits, alleging disability beginning August 4, 1994 (later amended to April 7, 2016). This claim was initially denied on July 27, 2016 and, again, on reconsideration on November 2, 2016. On December 21, 2016, Petitioner timely filed a Request for Hearing. On December 19, 2017, Administrative Law Judge (ALJ) David Willis held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Barbara Harper, appeared and testified. Impartial vocational expert Sara Statz also appeared and testified.

On March 9, 2018, the ALJ issued a Decision denying Petitioner's claims, finding that she was not disabled within the meaning of the Social Security Act. Petitioner timely requested

review from the Appeals Council and, on June 12, 2018, the Appeals Council denied Petitioner's Request for Review, making final the ALJ's Decision.

Having exhausted her administrative remedies, Petitioner timely filed the instant action, arguing generally that the ALJ's Decision was not in accordance with the law or the evidence, and that Petitioner is disabled from performing substantial gainful activity. *See* Pet. For Review, p. 2 (Dkt. 1). In particular, Petitioner claims that the ALJ erred when he (1) determined that she does not meet Listing 12.04, 12.06, 12.08, 12.11, and 12.15; (2) determined that Petitioner's credibility was not consistent with the record without providing clear and convincing reasons supported by substantial evidence; and (3) assigned an RFC which was not supported by the record. *See* Pet.'s Brief, pp. 10-19 (Dkt. 13). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that she is entitled to Supplemental Security Income disability benefits or, alternatively, remand the case for further proceedings and award attorneys' fees. *See id*. at p. 20; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support an ALJ's finding/conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health &*

*Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

As to questions of fact, the Court's role is to review the record as a whole to determine whether it contains evidence allowing a reasonable mind to accept the conclusions reached by the ALJ. *See Richardson*, 402 U.S. at 401. The ALJ is responsible for determining credibility and resolving conflicts within the medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving any ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence contained in the record (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *See Matney*, 981 F.2d at 1019. At the same time, the ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. <u>DISCUSSION</u>

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since April 7, 2016, the application date." (AR 12).

The second step requires a determination of whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If there is no severe medically determinable impairment or combination of impairments, benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following severe impairments: "bipolar II and depressive disorder, anxiety disorder, attention deficit hyperactivity

disorder (ADHD), and borderline personality disorder." *See* (AR 12) (explaining that "[t]hese impairments limit the claimant's abilities to do basic work-related activities, and are more than slight abnormalities with limited effects . . . .").

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 12-13).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine, repetitive tasks but not at a production rate. She is limited to simple work-related decisions in utilizing judgment or dealing with changes in the work setting. She can interact and respond appropriately to supervisors occasionally. She can also interact and respond appropriately to coworkers and the public occasionally. With coworkers, the contact can only be incidental throughout the workday but with no teamwork activities. Public contact could be incidental (not a required part of the job). The claimant would be off task 10% of the 8-hour workday and would be absent from work 1 day per month.

(AR 14).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that Petitioner has no past relevant work but that, considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, including sweeper/cleaner (industrial), document preparer/microfilming, and marker. *See* (AR 18-19). Therefore, the ALJ concluded that Petitioner "has not been under a disability, as defined by the Social Security Act, since April 7, 2016, the date the application was filed." (AR 20).

**B.     Analysis**

1.     The ALJ Did Not Err in Evaluating Whether the Severity of Petitioner's Impairments Meet or Medically Equal a Listed Impairment

As discussed above, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that impairment." *See* SSR 83-19; *see also* 20 C.F.R. § 404.1525; *Tackett*, 190 F.3d at 1099 (impairment meets or equals listed impairment only if medical findings (defined as set of symptoms, signs, and laboratory findings) are at least equivalent in severity to set of medical findings for listed impairment). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not

do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to

state why a claimant fails to satisfy every criteria of the Listing if they adequately summarize and

evaluate the evidence. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1200-01 (9th Cir. 1990); *Lewis*,

236 F.3d at 512.

Here, Petitioner argues that the ALJ erred in determining that her impairments do not

meeting Listing 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-

compulsive disorders), 12.08 (personality and impulse-control disorders), 12.11

(neurodevelopmental disorders), and 12.15 (trauma-and stressor-related disorders) – specifically

*Paragraph B* of these Listings. *See* Pet.'s Brief, pp. 11 (Dkt. 13) ("It is Petitioner's position that

the ALJ erred at step three of this sequential process by failing to properly consider whether

Petitioner's mental limitations met or equaled Listing 12.04, 12.06, 12.08, 12.11, or 12.15 when

he failed to properly analyze Paragraph B of these listings.").

Each Listing requires that, in addition to other criteria (the Paragraph A criteria),

Petitioner establish the she has:

> B.      Extreme limitation of one, or marked limitation of two, of the following
>         areas of mental functioning . . . .:
>
>> 1.      Understand, remember, or apply information . . . .
>>
>> 2.      Interact with others . . . .
>>
>> 3.      Concentrate, persist, or maintain pace . . . .
>>
>> 4.      Adapt or manage oneself . . . .

*See* 20 C.F.R. Part 404, Subpt. P, Appx. 1, §§ 12.04B, 12.06B, 12.08B, 12.11B, and 12.15B.[1]

An "extreme" limitation means the inability "to function independently, appropriately,

---

[1]  Petitioner's action is limited to the ALJ's consideration of these Listings' identical
Paragraph B criteria; she does not argue that she meets Paragraphs A and/or C (where
applicable) of each of these Listings. *See* Pet.'s Brief, pp. 11-15 (Dkt. 13).

effectively, and on a sustained basis," and a "marked" limitation means that "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(F)(2)(d)-(e); *see also* (AR 13) (ALJ similarly defining extreme and marked limitations).

The ALJ decided that Petitioner did not meet these requirements, finding that she had only (1) mild limitations in understanding, remembering, or applying information; (2) moderate limitations in interacting with others; (3) moderate limitations in concentrating, persisting, or maintaining pace; and (4) moderate limitations in adapting or managing herself. *See* (AR 13). Petitioner does not challenge the ALJ's findings with regard to her ability to understand, remember, or apply information; instead, she argues that she has marked (not moderate) limitations in each of the other three criteria (interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing herself). *See* Pet.'s Brief, p. 12 (Dkt. 13) ("Petitioner agrees that she was only mildly limited in [understanding, remembering, or applying information]. However, based on her limitations in the other areas, she would meet the requirements necessarily to qualify under each listing . . . .").[2]

After carefully considering the applicable Paragraph B criteria, the Court finds that substantial evidence from the record supports the ALJ's conclusions that Petitioner's impairments do not meet or equal any of these Listings.

       a.    *Interacting With Others*

Pursuant to the applicable regulation:

---

[2] To be clear, Petitioner does not suggest that she has an extreme limitation in any of the three remaining functional areas. Thus, to prevail on her claim of error, Petitioner must establish that she has marked limitations – i.e., is "seriously limited" in her ability to function "independently, appropriately, effectively, and on a sustained basis" – in at least two of the three remaining Paragraph B areas (interacting with others; concentration, persistence, or maintaining pace; and adapting or managing herself).

> This area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public. Examples include cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical verbal , emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness.

20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.00E(2). In determining that Petitioner has moderate limitations in this area, the ALJ noted her reports of social anxiety and difficulty coping with stressors related to some interactions. *See* (AR 13). But the ALJ also pointed out that Petitioner maintained relationships with friends or roommates and did not have difficulty interacting with and cooperating with her treatment providers. *See id.*

In arguing that the ALJ erred in finding that she is moderately limited in interacting with others, Petitioner counters that she "cannot maintain appropriate relationships, nor can she appropriately interact with others." Pet.'s Brief, p. 13 (Dkt. 13) (citing (AR 328, 330, 336, 700) (treatment notes referencing unstable relationships, tendency to push people away, rocky relationship with parents, difficulty interacting with patients and staff while receiving treatment, and difficulty interpreting social cues)). While Petitioner raises valid concerns, the problem is that, even assuming she has a harder time interacting with others, there is substantial evidence in the record supporting the ALJ's finding that she still is no more than moderately limited in this area. For example, state agency psychologists Mack Stephenson, Ph.D., and Dave Sanford, Ph.D., who reviewed Petitioner's medical records, concluded that Petitioner is only moderately limited in her ability to interact appropriately with the general public and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes (and is not significantly limited in the ability to ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, and maintain socially appropriate behavior). *See* (AR 68-71, 84-85). This opinion evidence, along with the ALJ's

observation that Petitioner is capable of maintaining some relationships and interacting with others, provides substantial support for the ALJ's finding that she has no more than moderate limitations in interacting with others.

      *b.*     *Concentrating, Persisting, or Maintaining Pace*

Pursuant to the applicable regulation:

> This area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.00E(3). In concluding that Petitioner has moderate limitations in this area, the ALJ said that her "anxiety, depression, and impulsivity interfered in this area," but nonetheless noted that "most of her mental status examinations did not show attention or focus problems." (AR 13).

In arguing that the ALJ erred in finding that she has only moderate limitations in concentrating, persisting, or maintaining pace, Petitioner states that she has "struggled to sustain concentration and focus from an early age and was not successful in maintaining adequate treatment to overcome her limitations." Pet.'s Brief, p. 14 (Dkt. 13) (citing (AR 284-288) (notations from teachers indicating Petitioner's difficulty with focusing and completing assignments on time); (AR 44) (Petitioner testifying that she struggles to focus on movies and cannot later relate story without difficulty)). Even so, various examinations generally did not show problems with Petitioner's attention and/or focus. *See* Respt's Brief, p. 4 (Dkt. 14) (citing (AR 353) (12/17/15 treatment note indicating Petitioner was agitated and anxious, but intact memory and well-oriented); (AR 449-54) (describing Petitioner's appearance over several

counseling sessions); (AR 468) (noting Petitioner was cooperative and alert, with normal speech); (AR 554) (noting normal memory and good judgment); (AR 555) (similar findings)). And, as set forth above, the state agency psychologists likewise concluded that Petitioner is only moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them (and is not significantly limited in the ability to carry out very short and simple instructions, perform activities within a schedule, sustain an ordinary routine without special supervision, make simple work-related decisions, and complete a normal workday and workweek without interruptions from psychologically based symptoms). *See* (AR 69-70, 84). Petitioner cannot achieve a remand by pointing to evidence that arguably supports a contrary finding when substantial evidence supports the ALJ's evaluation of the Paragraph B criteria. *See Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Sharp v. Astrue*, 2009 WL 3199592, *2 (D. Idaho 2009) ("It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision."). This is particularly true where Petitioner bears the burden of proving that she satisfies the Paragraph B criteria and, thus, meets a Listing. *See White v. Astrue*, 2010 WL 3893951, *5 (D. Idaho 2010).

     *c.*    *Adapting or Managing Oneself*

Pursuant to the applicable regulation:

> This area of mental functioning refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include: Responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions.

20 C.F.R. Part 404, Subpt. P, Appx. 1, § 12.00E(4). In ruling that Petitioner has moderate limitations in this area, the ALJ acknowledged that she "has difficulty coping with some stressors and repeated problems with suicidality," but found that she is able to care for pets, has done some work caring for children, completed job training, and can maintain activities of daily living with some independence – activities indicating that her problems in this area are not marked. (AR 13).

Petitioner contends that the ALJ erred in finding that she only has moderate limitations in adapting or managing herself, as she "can[not] consistently care for herself to the extent the ALJ alludes such that she could maintain her mental health in addition to competitive employment." Pet.'s Brief, p. 14 (Dkt. 13). Specifically, Petitioner emphasizes repeated treatments for being suicidal (including during the job training that the ALJ referenced in support of his findings); that she stopped attending counseling due to panic attacks when counselors and students rotated out; she stopped working as a nanny because it was "too much"; she quit a housekeeping job due to the anxiety and stress created by the fast pace and need for high quality; and – as to her pets – they did not require attention more than a few minutes per day. *See id*. at pp. 14-15 (citing (AR 304, 364, 466, 704, 752, 762) (treatment notes discussing Petitioner's suicidal ideation); (AR 13, 34, 38, 43, 46, 56) (Petitioner testimony at December 19, 2017 hearing).

However, the record below also reflects that Petitioner was stable and made progress in these areas when she consistently complied with medical treatment. *See, e.g.*, (AR 551) (4/5/13 Job Corps "Summary of Treatment," stating in relevant part: "Although medication compliance was initially an issue with Ms. Carew, she found that once she was back on it and was taking it regularly, she functioned much better, especially in the Job Corps environment. Towards the end of her stay in the program, she really appeared to have pulled herself together in a very good way, and eventually completed the program successfully."). The state agency psychologists also

confirmed as much. *See* (AR 72) (Dr. Stephenson stating in part: "Medical evidence shows that the clmt has a hx of mental illness and non-compliance w/tx. Recent evidence shows that since the clmt has been compliant w/tx her mood/affect and overall cognition have improved significantly."); *see also* (AR 85-86) (Dr. Sanford stating in part: "W/ continued compliance to medication and tx she is expected to have a functional stability."). "An individual who would otherwise be found to be under a disability, but who fails without justifiable cause to follow treatment prescribed by a treating source . . . cannot by virtue of such 'failure' be found to be under a disability." SSR 82-59, available at 1982 WL 31384, *1; *see also* 20 C.F.R. §§ 404.1530(b), 416.930(b) ("If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits."). Thus, the ALJ largely considered and discussed the very evidence on which Petitioner relies; here also, her divergent views and disagreement with the ALJ's weighing of that evidence do not warrant remand.

Listing criteria are demanding and stringent, with the burden of proof resting with a claimant. That burden is to provide and identify medical signs and laboratory findings that support all criteria for an impairment determination. *See, e.g.*, *Lewis*, 236 F.3d at 514. A diagnosis of a condition alone will not suffice; rather, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the Listing." 20 C.F.R. § 404.1525(d). Here, Petitioner suffers from impairments that no doubt impact her ability to work. However, an ALJ's decision cannot be reversed because there exists some other evidence in the record that might support a different conclusion. *See Sharp*, 2009 WL 3199592 at *2. More is needed. While Petitioner may dispute the ALJ's findings, they were not given in a vacuum, nor are they disconnected with the surrounding medical record and balance of briefing.

At this stage of the proceedings – and with the record/briefing now before the Court – this Court is not to resolve any conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court has the responsibility of reviewing the ALJ's decision so as to be certain that the ALJ's decision that Petitioner is not disabled is supported by the record. Here, the ALJ offered enough reasons for finding that Petitioner's impairments do not meet or equal a listed impairment.[3] Because the evidence can reasonably support the ALJ's conclusion in this respect, this Court will not substitute its judgment for that of the ALJ. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

    2.    The ALJ Did Not Err in Evaluating Petitioner's Credibility

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *See Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities). In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, as well as claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and

_____

    [3] At this point, it is worth remembering that, for Listings 12.04, 12.06, 12.08, 12.11, and 12.15, a claimant must show marked limitation of two Paragraph B criteria. *See supra.* In other words, even if one were to disagree with one of the at-issue areas of mental functional, Petitioner still would not meet one (or more) of the Listings, given the requirement for *two* such limitations.

aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186. In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Nonetheless, to reject a claimant's testimony, the ALJ must have clear and convincing reasons for doing so with specific findings of the same. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick*, 157 F.3d at 722).

Here, Petitioner alleges an inability to work, owing to her mental impairments. *See* Pet.'s Brief, p. 18 (Dkt. 13) ("The ALJ improperly singled out a few periods of stability from a lifelong struggle with significant mental health issues to discredit Petitioner."). For example, within her June 16, 2016 and October 27, 2016 "Functional Report(s) – Adult," Petitioner states that she:

- "[E]xperiences panic attacks frequently when she feels overwhelmed or pressured"; "cannot make decisions without the help of her mother"; "feels very disorganized and has difficulty working with others." (AR 200).

- Has "sleep disturbances and nightmares" contributing to a lack of sleep at night and correspondingly must "sleep a lot during the day." (AR 201).

- "[S]leeps and wakes in same clothes"; "showers every few days"; and "sometimes struggles with hair care." (AR 201, 253).

- "[G]ets lost easily – in her neighborhood and in the community" and "has high anxiety and cannot drive because of it." (AR 203, 255).

- Spends "very little time" with others, and "has no friends in Idaho." (AR 204, 256).

- Has issues completing tasks, concentrating, understanding, following instructions, and getting along with others. *See* (AR 205, 257).

- Does not handle stress or changes in routine "well at all." (AR 206, 258).

- Feels "frustrated regarding her family." (AR 207, 259).

- "[E]xperiences frequent panic attacks when she feels overwhelmed or pressured in social situations"; "has a hard time focusing, concentrating or making

decisions"; "is very disorganized, frustrated, distracted and agitated and has difficulties feeling safe when working with others." (AR 252).

- Sleeps 3-4 days at a time "during depressed state." (AR 253).

- "[D]oes not like to talk to people in authority" and would feel very uncomfortable." (AR 258).

She testified about those limitations during the December 19, 2017 hearing, in response to questions from her attorney that she:

- Has trouble cooking due to her anxiety. (AR 36).

- Does not have a driver's license because her anxiety is "very high" and she has "memory problems" that prevent her from "remembering the rules of the road long enough to pass the test." (AR 40-41).

- Doesn't like to leave the house unless she is with someone she knows very well. (AR 41).

- Quit a housekeeping job because it was "very stressful." (AR 43).

- Has to watch a movie several times to remember it. (AR 44).

- Had "massive panic attacks" when her counselors would rotate out. (AR 46).

- Her mental health treatment had not always been consistent because her mother changed the Petitioner's counselors frequently. (AR 47).

- Does not like to be around a lot of people because it really brings her anxiety "up very high." (AR 47).

- Has been suicidal since she was 11 years old. (AR 48).

- Believes even very simple, routine, and isolated jobs would be too stressful because "it's very difficult to find the motivation to even do the simplest of things." (AR 55).

- The Job Corps was too fast paced and she was having panic attacks several times a day. (AR 56).

The ALJ, however, concluded that, although Petitioner's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her "statements

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 15).  As described to follow, the ALJ's supplied justification in these respects amounts to clear and convincing reasons for questioning Petitioner's creditability.

First, there is no dispute that Petitioner has problems related to her mental health, and that such problems are severe.  The ALJ concluded as much when making his disability determination.  *See supra* (citing (AR 12) (ALJ concluding that Petitioner's bipolar II and depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD), and borderline personality disorder represent "severe impairments")).  Even so, the ALJ specifically accounted for Petitioner's limitations during the fourth step of the sequential process (RFC analysis).  *See supra* (citing (AR 13-14) (ALJ concluding that Petitioner should be limited to simple, routine, repetitive tasks that do not involve work at production rate; should be limited to simple work-related decisions in utilizing judgment or dealing with changes in work setting; can interact and respond appropriately to coworkers and public occasionally; can only incidentally contact coworkers throughout workday, but with no teamwork activities; can only incidentally contact public (not required part of job); and would be off task 10% of workday and absent from work 1 day per month)).  Therefore, where Petitioner's arguments insist on the existence of certain limiting impairments, they miss the point because the acknowledged limitations in the RFC accommodate her symptoms.  The question at this stage is not whether such limitations exist but, rather, whether Petitioner is able to work despite such limitations.

Second, as mentioned above, the ALJ repeatedly highlighted that medical treatment consistently was generally effective in managing Petitioner's symptoms.  *See* (AR 16) ("This pattern of good functioning with compliance (and deterioration when not taking medications or engaging in treatment) also appears to continue after her protective filing date.") (citing (AR

551)); *see also id.* ("The claimant attempted suicide by overdose with ibuprofen and anti-anxiety medications in February 2016. She had not been taking mental health medications as directed. . . . . Counseling notes from March 2016 through June describe the claimant had stable, euthymic moods when she took her medications.") (citing (AR 305-306, 449-463)); (AR 17) ("Other mental health treatment notes in 2017 indicate she was not on medications consistently.") (citing (AR 726)); *Id.* ("When she restarted her medications, she stabilized: 'Nicole tells me the medicines are helping. She is not manic and not depressed. Not suicidal. Notes that she is very hopeful about these medications.'") (quoting (AR 707)); (AR 18) ("Her longitudinal treatment history supports that she maintained good mental functioning – adequate for wok activity within the residual functional capacity restrictions above – when she was engaged in and compliant with treatment."). Noncompliance with a prescribed course of treatment is a clear and convincing reason for finding a claimant's subjective complaints lack credibility. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); 20 C.F.R. §§ 404.1530(b), 416.930(b). Although Petitioner interprets this evidence in a way that does not undermine her credibility (*see* Pet.'s Brief, pp. 15-18 (Dkt. 13)), she has not shown that the ALJ's interpretation in these respects was unreasonable. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Third, as to the objective medical evidence, the ALJ emphasized the several occasions where Petitioner's mental status examinations were unremarkable. *See, e.g.*, (AR 16) ("mental status examination was mostly within normal limits.") (citing ((AR 355, 357, 555, 560, 565-566)); (AR 17) ("Primary care provider clinic notes in late September 2016 indicated stable mental status examination: 'Insight: good judgment. Mental Status: normal mood and affect and active and alert. Orientation: to time, place, and person. Memory: recent memory normal

and remote memory normal.'") (quoting (AR 554)); *Id.* ("Mental status examination in January was normal, with good mood and full affect.") (citing (AR 731)); (AR 18) ("Despite these multiple diagnoses, the claimant's mental status examination was normal, calm, cooperative, dressed and groomed adequately, fair eye contact, normal speech, linear and goal-directed thought form, some delay in responding to questions, but fully alert and oriented, good memory with testing questions.") (citing (AR 744-745)). Additionally, the state agency psychologists' conclusions are consistent with these findings. *See supra* (citing (AR 68-71, 84-85)). "Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(2-3), 416.929(c)(2-3).

Finally, the ALJ concluded that Petitioner's daily activities were inconsistent with her allegations of disabling symptoms and limitations, explaining:

> At the hearing, the claimant testified she has anxiety often. She is able to do basic household chores and care for multiple pets. She thought she would have difficulty working in a fast-paced environment, such as in a restaurant. Due to depression, she found it hard to find motivation to do even simple things, she testified. However, she was able to make it through a long-term and full-time culinary training program at Job Corps in 2012 and 2013, and work as a nanny for 6 months in 2015, she described. She was also able to care for multiple pets. . . . .
>
> She was able to go on vacation to California for several weeks in 2017. In early August she had a "tired mood" and a constricted affect, but her mental functioning appeared normal. She reported wanting to become certified in CPR and start working at a day care center. These activities support the claimant had confidence in her own capacity for adaptation and simple work-related tasks.

(AR 15). Thus, the ALJ appropriately did not reject Petitioner's complaints that she suffers from certain impairments. Rather, he considered and discussed her daily activities, with his focus upon Petitioner's claim that she cannot work *because* those impairments allegedly limit her ability to work. *See, e.g., Madrid v. Colvin*, 2016 WL 1161978, *10, n.8 (N.D. Cal. 2016) ("The Ninth Circuit has held that the adjudicator may not discredit a claimant's testimony of pain and

deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.' As discussed herein, the ALJ did not reject Plaintiff's allegations that she suffers hand pain, but rather evaluated record evidence regarding Plaintiff's alleged diminished dexterity.") (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991)).

Together, these reasons offer clear and convincing explanations as to why the ALJ did not find Petitioner's testimony entirely credible. Here also, Petitioner identifies (or at least suggests the existence of) conflicting evidence (to that relied upon by the ALJ) in support of her position. While such conflicting evidence may not have been given the weight Petitioner would have preferred, the ALJ's decision to doubt Petitioner's credibility in denying disability benefits contains clear and convincing reasons for doing so. As required by controlling law, the ALJ will not be second-guessed as to such conclusions on this record with the justifications provided. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004) ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision.") (internal citations omitted). Therefore, the Court will not substitute its judgment when the evidence in the record can support the ALJ's findings.

3.      The ALJ Did Not Err in Evaluating Petitioner's RFC

The ALJ determined that Petitioner retains the RFC to perform a full range of work at all exertional levels with certain limitations, and that there are jobs in the national economy that do not require activities precluded by her RFC. *See* (AR 13-20). The ALJ reasoned that he found Petitioner's statements concerning the limiting effects of her impairments to be inconsistent with the record evidence. *See supra* (citing (AR 15)). Petitioner contends that the ALJ erred on this issue, arguing that, "[h]ad the ALJ properly considered Petitioner's testimony, he would have

reached the conclusion that she is disabled" and, "[w]hen the record is viewed as a whole, it reveals a typical mental health pattern – periods of successful treatment followed by periods of decompensation."  Pet.'s Brief, p. 19 (Dkt. 13).

These arguments are necessarily tethered to Petitioner's subjective complaints and, correspondingly, the ALJ's credibility determination.  In turn, because such an argument rises and falls with the Court's prior consideration of that issue, a repeated discussion of the merits of the ALJ's RFC determination in not necessary.  Suffice it to say, for the reasons already articulated here, substantial evidence exists to support the ALJ's findings at the fourth and fifth steps of the sequential process.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (ALJ properly relied on vocational expert's testimony because "[t]he hypothetical that the ALJ posed to the [vocational expert] contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence relied upon by the ALJ can reasonably and rationally support the ALJ's well-formed conclusions, even though such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is

supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  <u>ORDER</u>

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED: September 23, 2019

Ronald E. Bush
Chief U.S. Magistrate Judge